## UNITED STATES v. LINDGREN et al.

Circuit Court of Appeals, Fourth Circuit,
October 16, 1928.

No. 2719.

Arthur M. Boal, Admiralty Counsel, U. S. Shipping Board, of Washington, D. C. (Paul W. Kear, U. S. Atty., of Norfolk, Va., and H. H. Rumble, Sp. Asst. in Admiralty to Atty. Gen., on the brief), for appellant.

D. Arthur Kelsey and L. B. Cox, both of Norfolk, Va. (Kelsey & Jett, of Norfolk, Va., on the brief), for appellees.

Before WADDILL, PARKER and NORTHCOTT, Circuit Judges.

PARKER, Circuit Judge. This is an appeal from a decree in admiralty in favor of the administrator of one C. E. Barford and against the United States as owner of the steamship Hybert, one of the Shipping Board vessels. The suit was commenced by libel in personam, filed under the Suits in Admiralty Act, to recover damages for the death of Barford. The libel alleged that decedent was a seaman employed as third mate on the Hybert, and that his death was caused by the negligence of the officers and employees of the government who had the vessel in charge. There was no allegation, however, that decedent left surviving him any widow or children or parent or next of kin dependent upon him, or that the suit was instituted in behalf of such dependents. An exception was filed to the libel because of the lack of such allegation, and, upon the exception being overruled, it was established upon the hearing that decedent left no dependents and recovery was opposed because of that fact. The District Judge was of opinion, however, that libelant was entitled to recover under the Virginia death statute (section 5786 of the Code of Virginia), and, as dependency is not required for recovery thereunder, he entered a decree for libelant. No question is raised, on the one hand, as to the death of decedent having been caused by the negligence alleged, or, on the other, as to his having left no dependents. The question in the case is whether his administrator is entitled to recover under the statute of Virginia, which does not require a showing of dependency, or whether the right of recovery given by the Merchant Marine Act of 1920 in cases of wrongful death (41 Stat. 1007, 46 USCA 688) is exclusive.

There can be no question that, prior to the passage of the act of 1920, the Virginia statute would have been applicable. Prior to that act there was no liability for wrongful death under the general maritime law, Congress had not legislated upon the subject, and, in the absence of legislation by Congress, courts of admiralty applied the death statutes prescribed by states where death occurred. Great Lakes Dredge & Dock Co. v. Kierejewski, 261 U. S. 479, 43 S. Ct. 418, 67 L. Ed. 756; Western Fuel Co. v. Garcia, 257 U. S. 233, 42 S. Ct. 89, 66 L. Ed. 210; Lewis v. Jones (C. C. A. 4th) 27 F.(2d) 72; The Anglo-Patagonian (C. C. A. 4th) 235 F. 92. It is clear that, so long as Congress had not exercised the power given it under the commerce clause of the Constitution to legislate with respect to the liability in such cases, the states might occupy the field; but it is equally clear that, as soon as Congress acted, the legislation of the states was superseded, and that of Congress became supreme and exclusive. Cooley v. Board of Wardens of Port of Philadelphia, 12 How. 299, 317 et seq., 13 L. Ed. 996; County of Mobile v. Kimball, 102 U. S. 691, 698, 699, 26 L. Ed. 236; Morgan's etc., S. S. Co. v. Louisiana, 118 U. S. 455, 464, 6 S. Ct. 1114, 30 L. Ed. 237; Smith v. Alabama, 124 U. S. 465, 473, 8 S. Ct. 564, 566 (31 L. Ed. 508); Second Employers' Liability Cases, 223 U. S. 1, 54, 32 S. Ct. 169, 177 (56 L. Ed. 327, 38 L. R. A. [N. S.] 44). As was said by Mr. Justice Matthews in Smith v. Alabama:

"The grant of power to Congress in the Constitution to regulate commerce with foreign nations and among the several states, it is conceded, is paramount over all legislative powers which, in consequence of not having been granted to Congress, are reserved to the states. It follows that any legislation of a state, although in pursuance of an acknowledged power reserved to it, which conflicts with the actual exercise of the power of Congress over the subject of commerce, must give way before the supremacy of the national authority."

The situation with respect to the right of recovery in cases such as this is exactly the same as in cases arising out of the death of railway employees while engaged in interstate commerce. Prior to the enactment of the federal Employers' Liability Act (45 USCA §§ 51–59), Congress had left the question of the liability of employers in such cases to be determined by the laws of the several states; but upon the passage of that act it was held that all state laws and rules upon the subject were superseded, and that the rights of parties with relation thereto were to be determined solely by reference to the federal act. Second Employers' Liability Cases, supra; Mich. Cent. R. Co. v. Vreeland, 227 U. S. 59, 33 S. Ct. 192, 57 L. Ed. 417; Gulf, etc., R. Co. v. McGinnis, 228 U. S. 173, 33 S. Ct. 426, 57 L. Ed. 785; N. C. R. Co. v. Zachary, 232 U. S. 248, 256, 34 S. Ct. 305, 58 L. Ed. 591; S. A. L. Ry. v. Horton, 233 U. S. 492, 34 S. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1; In the Second Employers' Liability Cases, Mr. Justice Van Devanter said:

"True, prior to the present act the laws of the several states were regarded as determinative of the liability of employers engaged in interstate commerce for injuries received by their employés while engaged in such commerce. But that was because Congress, although empowered to regulate that subject, had not acted thereon, and because

the subject is one which falls within the police power of the states in the absence of action by Congress. * * * The inaction of Congress, however, in no wise affected its power over the subject. * * * And now that Congress has acted, the laws of the states, in so far as they cover the same field, are superseded, for necessarily that which is not supreme must yield to that which is."

The Merchant Marine Act of 1920 covered fully the right of the personal representative of a seaman to recover from his employer for personal injury resulting in death. Section 33 of that act (41 Stat. 1007, 46 U. S. C. A. 688) provides:

"Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located."

As will be seen, the effect of this act was to incorporate into the maritime law the statute applying to injuries to railway employees engaged in interstate commerce. The constitutionality of the statute was upheld in Panama R. Co. v. Johnson, 264 U. S. 375, 44 S. Ct. 391, 68 L. Ed. 748; and it was there interpreted as modifying the substantive maritime law so that the rights thereby conferred might be enforced either in a court of admiralty or in a court of law. Answering an argument that the statute was invalid because it restricted the enforcement of the rights conferred to actions at law and thereby encroached upon the admiralty jurisdiction Mr. Justice Van Devanter, speaking for the court, said that if such an interpretation were placed upon the statute a grave question would arise as to its constitutional validity, and that it should be interpreted as meaning that the injured seaman should have the benefit of the new rules, if he sued on the admiralty side of the court, as well as if he had sued at law. He said:

"The course of legislation, as exemplified in section 9 of the Judiciary Act of 1789, sections 563 (par. 8) and 711 (par. 3) of the Revised Statutes, and sections 24 (par. 3) and 256 (par. 3) of the Judicial Code [28 USCA § 41 (3), 371 (3)], always has been to recognize the admiralty jurisdiction as open to the adjudication of all maritime cases as a matter of course, and to permit a resort to common-law remedies through appropriate proceedings in personam as a matter of admissible grace. It therefore is reasonable to believe that, had Congress intended by this statute to withdraw rights of action founded on the new rules from the admiralty jurisdiction and to make them cognizable only on the common-law side of the courts, it would have expressed that intention in terms befitting such a pronounced departure,— that is to say, in terms unmistakably manifesting a purpose to make the resort to common-law remedies compulsory, and not merely permissible. But this was not done. On the contrary, the terms of the statute in this regard are not imperative but permissive. It says 'may maintain' an action at law 'with the right of trial by jury,' the import of which is that the injured seaman is permitted, but not required, to proceed on the common law side of the court with a trial by jury as an incident. The words 'in such action' in the succeeding clause are all that are troublesome. But we do not regard them as meaning that the seaman may have the benefit of the new rules if he sues on the law side of the court, but not if he sues on the admiralty side. Such a distinction would be so unreasonable that we are unwilling to attribute to Congress a purpose to make it. A more reasonable view, consistent with the spirit and purpose of the statute as a whole, is that the words are used in the sense of 'an action to recover damages for such injuries,' the emphasis being on the object of the suit rather than the jurisdiction in which it is brought."

The statute which was thus incorporated into the maritime law, and which conferred upon the injured seaman, or his representative, if his injuries resulted in death, rights which might be enforced either in an action at law or a suit in admiralty, clearly provides that there can be a recovery in case of death only where there is a showing of dependency. 35 Stat. 65; Gulf, etc., R. Co. v. McGinnis, supra; N. C. R. Co. v. Zachary, supra. And, in the light of the authorities cited above, we think that the statute must be deemed exclusive and to supersede all state legislation bearing upon the subject.

It is said that the injured seaman is giv-

en an election to proceed either under the old law or under the statute. This is correct, when it is understood as meaning that the election is to proceed under the old maritime law or under the statute. See Plamals v. The Pinar Del Rio, 48 S. Ct. 457, 72 L. Ed. 827. But it does not follow from this that the personal representative of a seaman may recover for wrongful death under a state death statute merely because, prior to the Merchant Marine Act, the state statute was applied by courts of admiralty in the absence of any other law to apply. Such statutes were not a part of the general maritime law, they were recognized only because Congress had not legislated on the subject, and, as shown above, as soon as Congress did legislate, the remedy which it prescribed became the exclusive remedy. When it is said that the injured employee may proceed under the old law, it is meant that he may invoke the rules of the maritime law as to wages, maintenance, and cure (264 U. S. at 391, 44 S. Ct. 391, 68 L. Ed. 748), not that he may invoke state statutes covering a field which has been entered by Congress, and which prior to the act of Congress were enforced by courts of admiralty only because Congress had not entered the field. It is unthinkable that Congress should have intended that, in addition to the rule prescribed by the Merchant Marine Act, the parties should be subjected to the rules prescribed by the Legislatures of the 48 states.

Since, therefore, libelant cannot recover for the death of the deceased seaman under the Virginia death statute, but must proceed under the Merchant Marine Act of 1920 making applicable the provisions of the Federal Employers' Liability Act, and, since dependency must be shown as a condition to recovery thereunder and it is admitted that deceased left no dependents, it is clear that the libel should have been dismissed.

■ The point is made that the Merchant Marine Act has no application, because it is said that decedent was not a seaman, but a mere shipkeeper of a ship out of commission. It was alleged in the libel, however, and admitted in the answer, that at the time of·his death decedent "was engaged in his duties as third mate and as such a seaman on said steamship." There was nothing anywhere in the pleadings contradictory of this allegation; and no amendment was asked or allowed. It would seem, therefore, that decedent's status as a seaman for the purposes of the suit was conclusively determined. Wigmore on Evidence (2d Ed.) vol. 2, p. 536.

■ But, if we ignore the pleadings and look only to the evidence, there can be no question as to decedent's status as a seaman within the meaning of the Merchant Marine Act. The Hybert had been laid up, it is true, but some time prior to the death of decedent she had been taken to the dry dock and was undergoing repairs preparatory to a voyage. Decedent was employed as third officer and came on duty for the first time on the morning of his death. At the time he received the fatal injury he was engaged in preparing the vessel for sea.

A seaman was defined by Congress in the Act of June 7, 1872, as any person employed or engaged to serve on board a vessel. R. S. § 4612 (46 USCA § 713). And in construing the Merchant Marine Act here under consideration the Supreme Court has held stevedores to be seamen within the meaning of the act because engaged in maritime service formerly rendered by the ship's crew. International Stevedoring Co. v. Haverty, 272 U. S. 50, 47 S. Ct. 19, 71 L. Ed. 157. In that case the court said:

"We cannot believe that Congress willingly would have allowed the protection to men engaged upon the same maritime duties to vary with the accident of their being employed by a stevedore rather than by the ship. The policy of the statute is directed to the safety of the men and to treating compensation for injuries to them as properly part of the cost of the business. If they should be protected in the·one case they should be in the other."

■ Certainly seamen employed to take a ship to sea who are engaged in making her ready for the voyage are not to be denied the status of seamen and the benefit of the act merely because the vessel is not commissioned at the time. See The Progresso (D. C.) 46 F. 292; The William Leishear (D. C.) 21 F.(2d) 862. In this case the application of the act happens not to be beneficial to the representative of the seaman; but, of course, its applicability is not to be determined by that circumstance.

Our conclusion is that the decree below should be reversed, and the libel dismissed.

Reversed.